W. HUDSON CONNERY, JR., ET. AL.,   )
                                    )          Davidson Chancery
          Plaintiffs/Appellants,    )          No. 95-3865-I
                                    )
VS.                                 )
                                    )
COLUMBIA/HCA HEALTHCARE             )          Appeal No.
CORPORATION, ET. AL.,               )          01A01-9709-CH-00529
                                    )
          Defendants/Appellees.     )

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

July 1, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


Robert S. Patterson, #6189
Patricia Head Moskal, #11621
BOULT, CUMMINGS, CONNERS & BERRY, PLC
414 Union Street, Suite 1600
P.O. Box 198063
Nashville Tennessee 37219
ATTORNEYS FOR PLAINTIFFS/APPELLANTS


Paul S. Davidson, #11789
Charles W. Cook, III, #14274
STOKES & BARTHOLOMEW, P.A.
2800 SunTrust Center
424 Church Street
Nashville Tennessee 37219
ATTORNEYS FOR DEFENDANTS/APPELLEES


XXXXXXX.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCURS:
WILLIAM C. KOCH, JR., JUDGE
WIILLIAM B. CAIN, JUDGE

W. HUDSON CONNERY, JR., ET. AL.,    )
                                    )        **Davidson Chancery**
         **Plaintiffs/Appellants,**          )        **No.  95-3865-I**
                                    )
**VS.**                                 )
                                    )
**COLUMBIA/HCA HEALTHCARE**          )        **Appeal No.**
**CORPORATION, ET. AL.,**                )        **01A01-9709-CH-00529**
                                    )
         **Defendants/Appellees.**           )


# O P I N I O N

Twenty former employees of "HealthTrust," a _____ sued HealthTrust and its "successor in interest," Columbia Health Care Corporation, to recover share of stock (or the value thereof) which they had purchased with earned bonuses and for the value of shares of stock due some of the plaintiffs due them upon discharge.  Two of the plaintiffs nonsuited, leaving eighteen.


Fourteen of the plaintiffs also sued on the theory that their rights were based upon their "discharge with cause."


The plaintiffs sought a declaration of their rights and damages for breach of contract, breach of fiduciary duty and conversion.


All plaintiffs moved for summary judgment in regard to their claims for declaratory relief, for breach of contract, and for the vesting of stock upon "change of control."  The defendants moved for summary judgment upon the same issues.  The Trial Court overruled plaintiffs' motion and sustained defendants' motion.


The defendants moved for summary judgment upon the remaining claims, i.e., the termination without cause basis of the suits of fourteen of the plaintiffs.  The Trial Court

sustained the motion and dismissed the suits of all eighteen plaintiffs who have appealed and presented the following issues:

I.  Whether the plaintiffs' rights to the restricted stock at issue vested upon the occurrence of the merger between HealthTrust notwithstanding the fact that HealthTrust's Compensation Committee determined that the stock would not best upon the occurrence of the merger and the plaintiffs were so notified orally and in writing. Also, in this regard:

(a)  Whether HealthTrust negated the automatic vesting provision in the 1990 Plan, which provided that a participant's right to restricted stock vests automatically unless HealthTrust provides otherwise in an "Award agreement," when on October 31, 1994, Health Trust's Compensation Committee met and awarded the restricted stock subject to the condition that the plaintiffs' rights would not best upon the merger, and HealthTrust sent memoranda, worksheets, and held meetings with the plaintiffs wherein it informed them that the restricted stock would not best upon the occurrence of the merger.

(b)  Whether the Compensation Committee's December 21, 1993, award of (i) the plaintiffs' targeted bonus amounts (the amount of bonus they could earn at the end of the following fiscal year) and (ii) the plaintiffs' right to elect a percentage of the actual bonus awarded at year end to purchase restricted stock constituted an award of restricted stock so as to prevent the Compensation Committee from being able to override the automatic vesting provision notwithstanding the fact that the bonuses and awards of restricted stock were not actually made until October 31, 1994, and the operative plan allows the Compensation Committee the right to override and/or amend vesting provisions.

II.  Whether plaintiffs Connery, Francis, Hobbs, Hough, Kennedy, Lambert, Martin, McCain, Moore, Price, Slusser and Wallace were terminated without cause so as to trigger their besting in the restricted stock at issue notwithstanding the fact that they admit that they were offered positions with Columbia, and they chose to resign rather than accept such positions.

III.  Whether, to the extent that plaintiffs Connery, Francis, Hobbs, Hough, Kennedy, Lambert, Martin, McCain, Moore, Price, Slusser and Wallace seek to recover the restricted stock and/or its appreciated value based on the circumstances of their termination, they waived their right the restricted stock when they executed Severance Protection Agreements which provided that the benefits granted thereunder were in lieu of any other severance or termination pay.

It is undisputed that the plaintiffs were employees of HealthTrust during its 1994 fiscal year which ended August 31, 1994, and were participants in a restricted stock purchase plans called the "Total Direct Compensation Plan," the "Amended and Restated HealthTrust, Inc.," and the "Hospital Company 1990 Stock Compensation Plan."

On October 15, 1991, the board of directors of Health Care created a "Compensation Committee of its members. According to the Compensation Plan:

> The purpose of the [1990 Plan] is <u>to advance the interests of [HealthTrust] and its shareholders</u> by providing incentives to officers and other key employees or individuals who contribute significantly to the strategic and long-term performance objectives and growth of [HealthTrust] by their invention, ability, industry, loyalty or exceptional service. The [1990] Plan is intended not only as a means of attracting <u>and retaining</u> outstanding management but also of promoting a close identity of interests between [HealthTrust's] management <u>and its stockholders</u>.
>
> The 1990 Plan defines an "Award" of restricted stock as "An award or grant of . . . Restricted Stock . . . by the Committee to a participant under the Plan." 1990 Plan, § 2 (App.I, 18).
>
> Notwithstanding the existence of the 1990 Plan, the 1990 Plan states that, "No person shall have any claim or right to be granted an Award under the Plan, and no Participant shall have any right under the Plan to be retained in the employ of the Company." 1990 Plan, § 18(a) (App.I, 39).
>
> The 1990 Plan also provides that the Plan "shall be administered by the Committee, which shall have the power to interpret the Plan and, subject to its provisions, to prescribe, <u>amend, waive and rescind</u> rules and regulations, to determine the terms of Awards and to make all other determinations necessary or desirable for the Plan's administration." 1990 Plan, § 3 (App.I, 22-23) (emphasis added). Moreover, "<u>all action</u> taken by the Committee in the administration and interpretation of the Plan . . . shall be final and binding on all concerned." 1990 Plan, § 3 (App.I, 22-23) (emphasis added). The Committee is also entitled to select the Participants to be granted Awards, determine the amounts and type or types of Awards to be made, set forth the terms, conditions and limitations applicable to each Award, and <u>prescribe the form of the instruments embodying Awards</u>

-4-

made under the plan.  1990 Plan, § 4 (App.I, 237) (emphasis added).

With regard to Awards of restricted stock, such as the restricted stock at issue in this case, Section 8 of the 1990 Plan provides specifically as follows:

(a) **Awards of Restricted Shares or Restricted Units**.  Awards of Restricted Stock or Restricted Units may be granted under the Plan in such form and on such terms and conditions as the Committee may from time to time approve, including, without limitation, restrictions on the sale, assignment, transfer or other disposition or encumbrance of such shares or units during the Restricted Period and the requirement that the Participant forfeit such share or units back to the Company upon termination of employment for specified reasons within the Restricted Period. Restricted Awards may be granted alone, in addition to or in tandem with other Awards under the Plan.

(b) Restricted Period.  At the time an Award of Restricted Stock or Restricted Units is made, the Committee shall establish the Restricted Period applicable to such Restricted Stock or Restricted Units during which period of time such Restricted Stock or Restricted Units are subject to a substantial risk of forfeiture in accordance with this Section and Section 13 hereof.  During the Restricted Period, such Restricted Stock or Restricted Units may not be sold, assigned, transferred, made subject to gift, or otherwise disposed of, mortgaged, pledged or encumbered.  Each Restricted Award may have a different Restricted Period.  <u>The Committee may, in its sole discretion, at the time a Restricted Award is made prescribe conditions for the incremental lapse of restrictions during the Restricted period and for the lapse or termination of restrictions upon the satisfaction of other condition than the expiration of the Restricted Period with respect to all or any portion of the Restricted Stock or Restricted Units.  The Committee may also, in its sole discretion, shorten or terminate the Restricted Period or waive any conditions for the lapse or Period or waive any conditions for the lapse or termination of restrictions with respect to all or any portion of the Restricted Stock or Restricted Units</u>.

- - - -

> As is stated in the TDC Plan, the actual bonus awarded to each employee at the end of the fiscal year was contingent upon the satisfaction of the objectives established by the Compensation Committee and the plan participants.
>
> . . . . the actual bonus would not be determined until the end of the fiscal year, and that the bonus could be above or below the target incentive opportunity amount, and HealthTrust would now know how much stock to award until year end.

On October 4, 1994, HealthTrust decided to merge with Columbia HCA and announced this decision to its employees.

On October 31, 1994, the Compensation Committee agreed to award plaintiffs their 1994 cash incentive bonuses under the 1990 plan under the following restrictions:

> (i)        for vesting on August 31, 1996, (ii) that vesting of awards will not accelerate pursuant to Section 18 (h) of such Stock Compensation Plan in the event of a "change in control" and, (iii) for such further terms and conditions as shall be set forth in an award agreement as executed by the Committee Chairman or his designee on behalf of the Committee; and
>
> RESOLVED, that the proper officers of the Corporation be and they hereby are authorized to take all such actions and execute all such agreements or other documents as they deem necessary or advisable or convenient or proper to carry out the intent of the foregoing resolution.

In January, 1994, HealthTrust distributed to its employees a memorandum and worksheet with "Election Forms."

On February 28, the board of directors of HealthTrust adopted and approved the plan of its Compensation Committee.

On April 24, 1994, Health Care merged with Columbia HCA.

**XXXXXXXXX**.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN,  JUDGE